## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **FRESH INC. a/k/a All Fresh Corporation,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 23-CV-00360-SEH-CDL** |
| **TRANSPORTATION INSURANCE COMPANY; CNA FINANCIAL CORPORATION; and/or CONTINENTAL CASUALTY COMPANY, individually, and d/b/a CNA Insurance Company; THE CENTRAL TRUST BANK f/k/a Central Bank of Oklahoma,** | |
| **Defendants.** | |

## OPINION AND ORDER

Before the Court are Defendant Transportation Insurance Company's ("Transportation") Motion for Leave to Amend Notice of Removal [ECF No. 10]; Defendant CNA Financial Corporation's ("CNAF") Motion to Dismiss [ECF No. 19]; Defendant The Central Trust Bank's ("CTB") Motion for Judgment on the Pleadings [ECF No. 23]; Plaintiff Fresh Inc.'s ("All Fresh") Motion to Remand [ECF No. 24]; All Fresh's Motion to Strike [ECF No. 28]; and All Fresh's Application for Ruling [ECF No. 44].

All Fresh sued the defendants in Tulsa County District Court and Transportation removed the action here. Because Transportation has proved diversity of citizenship by a preponderance of the evidence, the Court grants its motion to amend and denies All Fresh's motion to remand. The Court lacks personal jurisdiction over CNAF; therefore, its motion to dismiss is granted. The Court also dismisses without prejudice All Fresh's claim against CTB for failing to state a claim upon which relief may be granted. However, the Court recognizes that All Fresh has requested an opportunity to amend the complaint.[1] The Court grants that request and, if All Fresh chooses to amend, it is directed to file an amended complaint within **21 days** from the date of this order. Because the Court lacks sufficient information to assess the statute of limitations argument CTB brings in its motion for judgment on the pleadings, the Court denies the motion, in part, without prejudice to its refiling, but grants it insofar as it seeks dismissal of All Fresh's claim. All Fresh's motion to strike is denied as moot and its application for ruling is granted through entry of this omnibus order.

---

[1] For consistency with the Federal Rules of Civil Procedure, the Court refers to the petition filed in state court as the complaint. Although All Fresh has not moved for leave to amend by separate motion, it has requested to amend its claims against CTB multiple times through briefing. [ECF Nos. 28 at 2; 29 at 5–6]. The Court grants that request in the interest of justice. Fed. R. Civ. P. 15(a)(2). If All Fresh chooses to amend, its filing will be deemed an amended complaint in this action.

## I.   <u>Background</u>

This case arises from a fire loss that occurred on December 30, 2019. [ECF No. 2-1 at ¶ 12]. All Fresh insured property located in Tulsa, Oklahoma with Transportation, CNA, and Defendant Continental Casualty Company d/b/a CNA Insurance Company (collectively, "CNA").[2] [*Id.* at ¶¶ 2, 6]. All Fresh used CNA's auto draft system to pay policy premiums by using an account held with CTB. [*Id.* at ¶ 7].

In late 2019, CNA's auto draft system created an interruption of payment on the policy. [ECF No. 2-1 at ¶ 9]. Despite All Fresh's instruction to CTB's private bank representative to pay the premiums to CNA's auto draft system, CTB failed to pay the premiums as directed. [*Id.* at ¶ 10]. On December 30, 2019, the property suffered a fire loss. [*Id.* at ¶ 12]. The loss was reported to CNA on January 26, 2020, which spurred an investigation into the loss. [*Id.* at ¶¶ 13–14].

---

[2] The Court takes the background facts from the complaint and accepts All Fresh's allegations as true when deciding both substantive and jurisdictional challenges raised in the pending motions. *See Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1512 (10th Cir. 2007) (at the motion to dismiss stage, the court accepts all the well-pleaded allegations of the complaint as true and construes them in the light most favorable to the plaintiff). The Court recognizes that CNAF specifically objects to All Fresh's characterization of it as an insurance company. [ECF No. 19 at 3]. However, the complaint refers to these three defendants collectively as "CNA" throughout, and every factual allegation related to the insurance claim cites to "CNA." [*See, e.g.*, ECF No. 2-1 at ¶ 2].

On April 8, 2020, a CNA customer service representative sent an email to

Cody McCoy, of All Fresh:

> Dear Cody,
>
> Per our conversation Tuesday, 4/7/20, your account status is ACTIVE. On 3/20/20 we reinstated your policy without lapse in coverage effective 3/19/20. Upon that reinstatement, I was then notified that your reinstatement was declined due to a claim conversation that took place on 1/27/20. You had a loss on 12/30/19 which initially impacted that decision by the UW Beverly Douglas. However, Beverly Douglas reached out to her manager Dee Marley and the reinstatement was approved. Therefore your account is ACTIVE and without a lapse in coverage.
>
> Please note that there was a refund issued to you in error for the amount of $3,496.00 on 4/2/20. That refund is to be discarded since the funds are applied to your account[.] I've reached out to your agent Miguel Jurado (Brown & Brown) at 860-667-9000 and left him a voice message to contact you pertaining to your concerns regarding your policy and the above mentioned claim. I provided my email and contact information for communication and have yet received a response. Please note..your account is currently ACTIVE and there is NO LAPSE in coverage.

[ECF No. 2-1 at ¶ 15]. On October 5, 2020, CNA advised All Fresh in writing

that it was denying all coverage for the fire loss due to a "lapse in coverage."

[*Id*. at ¶ 19].

In 2021, All Fresh sued CNA in Tulsa County District Court. [ECF No. 2

at ¶ 2]. That case was later removed to federal court and resolved through a

stipulation of dismissal without prejudice. [*Id*. at ¶¶ 4, 5].

4

On July 12, 2023, All Fresh sued CNA and CTB in Tulsa County District Court for breach of contract and bad faith. [ECF No. 2-1 at 1–7]. CTB filed a motion to dismiss on August 3, 2023, arguing that All Fresh failed to state a claim against it upon which relief could be granted. [ECF No. 2-10 at 1–4]. All Fresh responded in opposition and alternatively requested leave to amend its petition. [ECF No. 2-12 at 1–6].

On August 21, 2023, Transportation removed the action to this Court based on diversity jurisdiction. [ECF No. 2]. Two days later, Transportation moved under 28 U.S.C. § 1653 to amend its notice of removal by correcting its statement of CTB's citizenship. [ECF No. 10].

CNAF moves to dismiss All Fresh's claims against it under Fed. R. Civ. P. 12(b)(2) and (b)(5), asserting lack of personal jurisdiction and insufficient service of process. [ECF No. 19].

CTB moves for judgment on the pleadings, pursuant to Fed. R. Civ. P. 12(c), arguing that All Fresh's claims against it are barred by the statute of limitations. [ECF No. 23]. All Fresh moves to strike this pleading, claiming "the pleadings are not closed" and it "has not had an opportunity to file an amended Petition[.]" [ECF No. 28 at 2].

All Fresh moves to remand, arguing that Transportation failed to establish diversity jurisdiction or prove fraudulent joinder. [ECF No. 24]. All Fresh further contends that CTB's state court motion to dismiss waived

removal. [*Id*.]. All Fresh also brings an application for ruling on its motion to remand. [ECF No. 44].

## II.   Discussion

### A. *Transportation has proven diversity jurisdiction by a preponderance of the evidence.*

A party may remove a state civil action to federal court if it is a matter in "which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). But the removing party must comply with certain procedural requirements. 28 U.S.C. § 1446. "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).

Federal courts have diversity jurisdiction over civil actions where the amount in controversy exceeds $75,000 and the parties are citizens of different states. 28 U.S.C. § 1332(a). "Removal typically proceeds on jurisdictional allegations, not proof of jurisdictional facts." *Brown v. Nationwide Ins. Co.*, No. 21-4122, 2023 WL 4174064, at *4 (10th Cir. 2023). Therefore, "[t]o assess jurisdiction at the time of removal, a district court may rely on the allegations in the complaint and the information provided in the notice of removal." *Id.*

However, "when the plaintiff contests, or the court questions, the defendant's allegation[s,]" evidence establishing jurisdiction is required.

*Brown,* 2023 WL 4174064, at *4 (citations omitted). "If challenged, the 'party invoking diversity jurisdiction bears the burden of proving its existence by a preponderance of the evidence.'" *Id.* (quoting *Middleton v. Stephenson*, 749 F.3d 1197, 1200 (10th Cir. 2014).

Under 28 U.S.C. § 1446(b)(1), a defendant sued in state court has 30 days from receiving, "through service or otherwise … a copy of the initial pleading" in which to file a removal notice in federal court.[3] A defendant seeking removal generally has the right to freely amend its removal notice during this 30-day removal period. *Mason v. Thompson*, No. CIV-05-1464-HE, 2006 WL 1134939, at *1 (W.D. Okla. April 27, 2006) (citations omitted); *see also* 14 C. Wright & A. Miller, *Fed. Prac. & Proc.* § 3733 (Rev. 4th ed.) (updated Sept. 2025) ("Prior to the expiration of the 30-day period for removal, the defendants may freely amend the notice of removal."). However, after the 30-day period has expired, "defendants may amend the notice only to set out more specifically the grounds for removal that already have been stated in the original notice." Wright, *et al.*, § 3733 (amendment "may seek to accomplish any of several objectives," such as correcting "an imperfect

---

[3] The statute further states that the removal period could alternatively run "within 30 days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter." 28 U.S.C. § 1446(b)(1).

statement of citizenship … however, defendants may not add completely new grounds for removal or furnish missing allegations…."). Under 28 U.S.C. § 1653, "[d]efective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts." But § 1653 permits amendments only to "incorrect statements about jurisdiction that actually exists, and not defects in the jurisdictional facts themselves." *Newman–Green, Inc. v. Alfonzo–Larrain*, 490 U.S. 826, 831 (1989).

Here, Transportation seeks leave to amend its notice of removal under § 1653 to allege that CTB "is a citizen of the State of Missouri." [ECF No. 10 at ¶ 4]. All Fresh's petition alleges that CTB is "a citizen of the State of Oklahoma." [ECF No. 2-1 at ¶ 3]. Transportation recognized this allegation in its notice of removal and argued that CTB was "fraudulently joined and its diversity destroying presence in this action should be disregarded." [ECF No. 2 at ¶ 18]. However, Transportation now seeks amendment to its notice to correct an "incorrect statement of citizenship." [ECF No. 10 at 4].

Transportation argues that "Central Bank of Oklahoma is merely a trade name for The Central Trust Bank, a state trust bank domesticated in Missouri under Charter No. 9277, with its principal and regular office located in Jefferson City, Missouri." [ECF No. 10 at ¶ 3]. Therefore, Transportation contends that CTB is "a citizen of the State of Missouri," and "diversity jurisdiction … existed in fact at the time of removal." [*Id.* at ¶¶ 4, 8]. In

support, Transportation cites *Wachovia Bank v. Schmidt*, 546 U.S. 303, 306 (2006). [ECF No. 10 at ¶ 4]. A redlined amended notice of removal and screenshots of Missouri business filing documents are attached to Transportation's motion. [ECF No. 10-1 at 1–12, 43–46].

In response, All Fresh moves to remand this action to state court, contending that Transportation failed to meet its burden to prove diversity jurisdiction.[4] [ECF No. 24 at 6–8]. All Fresh argues that CTB's citizenship should be determined by the "total activities test" set out in *Amoco Rocmount Co. v. Anschutz Corp.*, 7 F.3d 909 (10th Cir. 1993), which "focuses on the state where a substantial portion of the corporation's business is located." [ECF No. 24 at 5]. All Fresh argues that Transportation failed to submit evidence that CTB is "not solely operated in Oklahoma," and claims CTB's presence in Oklahoma is "most visible to the public as its principal place of business." [*Id.* at 7–8]. All Fresh attaches to its motion to remand several photos of "Central Bank of Oklahoma" branch locations. [ECF No. 24-4].

Transportation replies that it "learned from counsel for The Central Trust Bank that 'Central Bank of Oklahoma' had merged into The Central Trust Bank in 2021," and cites the certificate of merger attached to CTB's notice of party name correction filed herein. [ECF No. 31 at 2; ECF No. 13-1]. In

---

[4] In its response to Transportation's motion to amend, All Fresh incorporates by reference its motion to remand. [ECF No. 26 at 1–2].

response to All Fresh's motion to remand, Transportation points to CTB's

corporate disclosure statement filed pursuant to Fed. R. Civ. P. 7.1, which

states that CTB is "incorporated in Missouri with its principal place of

business in Missouri." [ECF No. 30 at 19; ECF No. 11].

Transportation attaches to its response screenshots from the Oklahoma

Secretary of State showing:

- CTB is an existing Missouri "Foreign For Profit Business
  Corporation" with a formation date of September 28, 2021 [ECF No.
  30-3 at 2];

- "Central Bank of Oklahoma" is a "Merged" Oklahoma "Domestic
  Bank" that was formed December 22, 2004, but is now "*Inactive*"
  [*Id.* at 1, 3 (emphasis in original)]; and

- "Central Bank of Oklahoma" is an "*Active*" "Tradename" for a
  "Foreign For Profit Business Corporation" [*Id.* at 1 (emphasis in
  original)];

Transportation also attaches screenshots of FDIC filings showing that CTB is

the "Succeeding Institution" for the "Central Bank of Oklahoma" and that

CTB is a state-chartered bank with its main office in Jefferson City, Missouri.

[ECF Nos. 30-4, 30-5].

Last, Transportation attaches a declaration from Dale Prevett, President

of the Central Trust Bank, Owasso Division. [ECF No. 30-7]. Prevett states

that "Jefferson City, Missouri is where [CTB's] officers and board of directors

direct, control, and coordinate the bank's corporate, financial, and community

and public relations activities." [*Id.* at ¶ 5]. He further states that this location is where "managerial, administrative, and support services" of CTB are directed, where "strategic and long-term planning" occurs, and where "supervision of legal affairs, and management of community and public relations are directed." [*Id.* at ¶¶ 6–7]. According to Prevett, CTB has 181 branch offices with only 10 located in Oklahoma, and has 12 directors and hundreds of officers, with a "majority of … directors and officers liv[ing] and work[ing] in Missouri." [*Id.* at ¶¶ 8–9]. Prevett concludes his declaration by stating that CTB is "not a citizen of the State of Oklahoma." [*Id.* at ¶ 10].

Transportation has shown CTB to be a citizen of Missouri. For removal and diversity jurisdiction purposes, a corporation is "deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business[.]" 18 U.S.C. § 1332(c)(1). "State banks, usually chartered as corporate bodies by a particular State, ordinarily fit comfortably within this prescription." *Wachovia Bank v. Schmidt*, 546 U.S. 303, 306 (2006). The Court finds that Transportation has either provided or cited sufficient evidence in the record to demonstrate CTB is a corporation incorporated in Missouri. [ECF No. 11; 30-3 at 2]. Transportation's redlined Amended Notice of Removal states that CTB is "a state trust bank domesticated in Missouri." [ECF No. 10-1 at 4, ¶ 18]. Because the Notice does not explicitly state that CTB is a "corporation,"

11

the Court looks to CTB's disclosure statement filed under Fed. R. Civ. P. 7.1 as clarification, which states that CTB is "a corporation incorporated in Missouri." [ECF No. 11 at 1]. The Court finds this sufficient to establish CTB is a corporation incorporated in Missouri.

The parties dispute CTB's principal place of business. Transportation contends that it is in Jefferson City, Missouri, where CTB's headquarters are located. [ECF Nos. 30 at 17–18, 30-7 at 2]. All Fresh contends that it is in Oklahoma, where CTB maintains multiple branches and has a "visible presence." [ECF No. 24 at 7–8]. However, to reach this conclusion, All Fresh relies on the "total activities test" set out in *Amoco*, [*id*. at 5], which was abrogated by *Hertz Corp. v. Friend*, 559 U.S. 77, 91–93 (2010).

The *Hertz* court held that "principal place of business" refers to "the place where a corporation's officers direct, control, and coordinate the corporation's activities." 559 U.S. at 92–93. This "should normally be the place where the corporation maintains its headquarters—provided that the headquarters is the actual center of direction, control, and coordination, *i.e.*, the 'nerve center[.]'" *Id*. at 93. Recognizing that the "burden of persuasion for establishing diversity jurisdiction … remains on the party asserting it[,]" *Hertz* further held that "parties must support their allegations [of jurisdictional facts] by competent proof." *Id*. at 96–97. The court rejected the

notion that filings with government agencies, without more, would be sufficient proof to establish a corporation's "nerve center." *Id.* at 97.

Here, Transportation provides "competent proof" that CTB's principal place of business is in Missouri. Although Transportation submits government filings showing CTB is a Missouri state-chartered bank with a principal office address in Jefferson City, Missouri, Transportation does not rely solely upon these filings. It also points to CTB's disclosure statement, filed pursuant to Fed. R. Civ. P. 7.1(a)(2), and attaches a declaration from a division president showing that CTB's officers direct, control, and coordinate CTB's activities in Missouri. The Court finds this sufficient to show that CTB's principal place of business is in Missouri.

Transportation has therefore carried its burden to prove diversity jurisdiction by a preponderance of the evidence. Because this Court has subject matter jurisdiction under 28 U.S.C. § 1332, remand to state court for lack of subject matter jurisdiction is not warranted. Transportation's motion for leave to amend its notice of removal [ECF No. 10] is granted.

### B. CTB did not waive removal by participating in the case below.

All Fresh further argues that CTB waived removal by filing a motion to dismiss in state court. [ECF No. 24 at 2–5]. Thus, All Fresh invokes the procedural, common-law doctrine of "waiver by participation." *See City of Albuquerque v. Soto Enters., Inc.*, 864 F.3d 1089, 1093 (10th Cir. 2017)

("Waiver by participation is a common-law creation."). Remand under this doctrine is an exercise of a district court's "inherent power to remand." *Id*. at 1098 n.12 (citation omitted).

The doctrine allows remand "where a defendant has participated in the state court before seeking removal." *Soto*, 864 F.3d at 1093. "Generally, a defendant waives removal by taking some substantial offensive or defensive action in the state court action indicating a willingness to litigate in that tribunal before filing a notice of removal with the federal court." *Id*. at 1098 (internal quotations omitted). A defendant does not waive removal by simply filing an answer. *Id*. Nor does he waive removal by filing a motion to dismiss on issues other than the merits. *Id*. at 1099 n.13. "[W]aiver must be clear and unequivocal, meaning that short of [the defendant] seeking an adjudication on the merits, the right to removal is not lost ....'" *Id*. at 1098 (quotation marks omitted).

"The Tenth Circuit has adopted a bright-line rule with a fuzzy exception for waiver of removal." *Kolb v. Mayes Emergency Servs. Tr. Auth.*, No. 21-CV-209-JFH-CDL, 2022 WL 3654743, at *2 (N.D. Okla. Aug. 24, 2022). When a defendant, for example, "files a motion to dismiss seeking disposition, in whole or in part, on the merits in state court before removing the case to federal court, it manifests a clear and unequivocal intent to submit the case to the state court's jurisdiction, and thus waives removal." *Soto*, 864 F.3d at

14

1099. However, because "this bright-line rule can lead to unfair results" in limited circumstances, there is an exception. *Id*. A defendant does not waive removal when "a state's procedural rules compel a defendant's state-court participation." *Id*. Whether the exception applies turns on whether defendants will potentially be harmed. *Id*. For example, the court considers whether, upon remand, a defendant would "lose its opportunity to file a motion to dismiss because it failed to comply with a state's procedural rule." *Id*.

Here, the Court finds the exception applies because CTB was compelled to file its motion to dismiss. In Oklahoma, a defendant must serve a responsive pleading such as an answer or a motion to dismiss within 20 days of receiving service. 12 O.S. § 2012(A). And, as explained above, CTB had 30 days to file a notice of removal under 28 U.S.C. § 1446(b)(1). In determining whether the *Soto* compelled-participation exception applies, courts "don't examine whether procedural rules *allowed* the participation, [but instead] examine whether the procedural rules *compelled* the participation." 864 F.3d at 1100 (emphasis in original).

This case is distinguishable from *Kolb v. Mayes Emergency Servs. Tr. Auth.*, No. 21-cv-209-JFH-CDL, 2022 WL 3654743 (N.D. Okla. Aug. 24, 2022), because the removing defendant in that case requested a hearing on its motion to dismiss. 2022 WL 3654743, at *1. As a matter of first impression,

15

the district court held that "requesting a hearing on a motion to dismiss in Oklahoma state court is substantial defensive action indicating a willingness to litigate in state court which waives a defendant's right to remove the action to federal court." *Id*. at *2–3. Contrary to *Kolb*, the circumstances here show that CTB's actions in state court fall into the fuzzy exception to the bright-line waiver rule. *See Boles v. CarShield, LLC*, No. 22-cv-00034-WPJ-MTS, 2023 WL 8079020, at *3 (N.D. Okla. Nov. 21, 2023) (concluding defendants did not waive their right to removal by filing a motion to dismiss in Oklahoma state court because they were compelled to participate "due to the state's procedural rules"). CTB never requested a hearing on its motion to dismiss. Therefore, CTB's filing of its motion in state court did not waive removal.

Moreover, Transportation, not CTB, filed the notice of removal. "The Court should be especially reluctant to take away one defendant's Congressionally-bestowed right to remove because of another defendant's actions. A defendant may not itself want to remove, but does not mind consenting to another defendant's request to remove." *Szuszalski v. Fields*, No. 19-cv-0250 RB-CG, 2019 WL 5964602, at *12 (D.N.M. Nov. 13, 2019) (quotation omitted). All Fresh has failed to cite any binding authority requiring the Court to find CTB waived consent under these circumstances. All Fresh's motion to remand [ECF No. 24] is denied.

16

### C. The Court lacks personal jurisdiction over CNAF.

CNAF moves to dismiss for lack of personal jurisdiction and insufficient service of process. [ECF No. 19]. Attached to its motion to dismiss is a declaration of David B. Lehman, an employee of Defendant Continental Casualty Company ("Continental Casualty") and Assistant Secretary of CNAF.[5] [ECF No. 19-1]. Lehman states that "CNAF is a publicly traded holding company, organized under the laws of the State of Delaware," with "its principal place of business in Chicago, Illinois. CNAF was created for, among other reasons, the purpose of holding common stock of a number of operating subsidiaries for the benefit of CNAF's shareholders." [*Id.* at ¶ 2]. Lehman explains that "CNAF is the parent company of The Continental Corporation," which is the parent company of Continental Casualty, which in turn is the parent company of Transportation. [*Id.* at ¶ 3]. Lehman states that "'CNA Commercial Insurance' is not a company. Rather, 'CNA' is a service mark registered with the United States Patent and Trademark Office by CNAF." [*Id.* at ¶ 4]. Certain direct and indirect subsidiaries of CNAF, like Continental Casualty and Transportation, "are permitted to use this service mark and do so in their insurance underwriting and claims activities." [*Id.*].

---

[5] Lehman's declaration is unsworn but made under penalty of perjury, pursuant to 28 U.S.C. § 1746.

Lehman declares that CNAF does not do business in Oklahoma, does not own property in Oklahoma, and does not have any offices or employees in Oklahoma. [ECF No. 19-1 at ¶ 5]. Lehman further declares that CNAF is not now and never has been a licensed insurer and has never held a certificate of authority from the Commissioner of the Department of Insurance of the State of Oklahoma. [*Id.* at ¶ 6]. He states that "CNAF does not and has never developed, underwritten, marketed, or issued insurance policies anywhere," including Oklahoma." [*Id.* at ¶ 7]. And he explains that "CNAF does not hire and never has hired any underwriters or other employees responsible for setting premiums for any insurance policies issued by any of its subsidiaries, including Continental Casualty and Transportation." [*Id.* at ¶ 9]. Nor does CNAF "make the decision as to which subsidiary insurance company issues a policy." [*Id.*]. CNAF has also never "adjusted, settled, or paid any insurance claims anywhere," including Oklahoma. [*Id.* at ¶ 10].

Lehman states that "[n]o person or entity, including any direct or indirect subsidiary of CNAF, has ever had the express or implied authority to act as CNAF's agent in the issuance of insurance policies or handling [of] claims for insurance benefits." [ECF No. 19-1 at ¶ 12]. He explains that "CNAF, Continental Casualty, and Transportation do not do business as 'CNA Commercial Insurance' in Oklahoma or elsewhere." [*Id.* at ¶ 14]. He further states that "CNAF did not develop, underwrite, or issue an insurance policy

18

to Plaintiff … did not participate in or make any decisions regarding the adjustment, settlement, or denial of coverage or payment of any of Plaintiff's insurance claims," and "had no direct or indirect contact with Plaintiff." [*Id.* at ¶¶ 15, 17, 19].

According to Lehman, "CNAF has no employees," and its board of directors conducts separate meetings from those of its subsidiaries. [ECF No. 19-1 at ¶ 20]. CNAF also maintains minutes of its board meetings, by-laws, articles of incorporation, and corporate records, while its subsidiaries have their own minutes, by-laws, articles of incorporation, and corporate records. [*Id.* at ¶ 21]. "CNAF maintains its own books and accounting records and its own separate banking financial accounts." [*Id.* at ¶ 21].[6] Finally, Lehman declares that "CNAF and its direct and indirect subsidiaries, including Continental Casualty and Transportation, have always been separate and distinct corporate entities." [*Id.* at ¶ 22].

As the plaintiff, All Fresh has the burden of demonstrating personal jurisdiction over CNAF. *Vora v. Dionne*, No. 23-1090, 2024 WL 509030, at *2 (10th Cir. Feb. 9, 2024) (citing *Shrader v. Biddinger*, 633 F.3d 1235, 1239 (10th Cir. 2011). To do so, it must satisfy Oklahoma's long-arm statute and constitutional due process. *Breckenridge Consulting, LLC v. Tek For Your*

---

[6] Lehman's declaration contains two paragraphs numbered "21."

*Life, LLC*, No. 23-248-JWB, 2024 WL 1481084, at *2 (N.D. Okla. March 26, 2024) (citation and internal quotations omitted). "The Oklahoma long-arm statute allows jurisdiction to the fullest extent permitted by constitutional due process, so courts can proceed straight to the constitutional issue." *Id.* (citing *Dental Dynamics, LLC v. Jolly Dental Grp., LLC*, 946 F.3d 1223, 1229 (10th Cir. 2020); *see also* 12 O.S. § 2004(F)).

"To exercise jurisdiction in harmony with due process, defendants must have minimum contacts with the forum state, such that having to defend a lawsuit there would not offend traditional notions of fair play and substantial justice." *Shrader*, 633 F.3d at 1239 (10th Cir. 2011) (cleaned up). "The minimum contacts may give way to specific or general jurisdiction." *Just Between Friends Franchise Sys., Inc.*, No. 23-CV-098-JFH-JFJ, 2023 WL 2496584, at *3 (citing *Intercon, Inc. v. Bell Atl. Internet Sols., Inc.*, 205 F.3d 1244, 1247 (10th Cir. 2000)). "At the pleading stage, a plaintiff need only establish a prima facie showing of personal jurisdiction." *Id.* (citing *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Kozeny*, 19 F. App'x 815, 822 (10th Cir. 2001)).

General personal jurisdiction "requires that a defendant have contacts with the forum so continuous and systematic as to render [it] essentially at home in the forum State." *Fireman's Fund Ins. Co. v. Thyssen Min. Const. of Canada, Ltd.*, 703 F.3d 488, 493 (10th Cir. 2012) (internal quotation marks

20

and citation omitted). "Unlike for specific jurisdiction, the litigation need not arise from the defendant's activities in the forum." *Id.*

Specific jurisdiction requires that the litigation "arise from the defendant's activities in the forum" and that the defendant have "sufficient minimum contacts with the forum state." *Id.* at 493. To establish minimum contacts, a plaintiff must show two things. First, that the defendant "purposefully availed itself of the privilege of conducting activities within the forum state." *Id.* (cleaned up). This requirement is also called the "purposeful direction" requirement. *Old Republic Ins. Co. v. Continental Motors, Inc.*, 877 F.3d 895, 904–05 (10th Cir. 2017) (citation omitted). Second, a plaintiff must show that its injuries "arise out of [the] defendant's forum-related activities." *Id.* at 908 (quoting *Shrader*, 633 F.3d at 1239).

"When a district court rules on a Fed. R. Civ. P. 12(b)(2) motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, … the plaintiff need only make a prima facie showing of personal jurisdiction to defeat the motion." *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998) (citation omitted). "The plaintiff may make this prima facie showing by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant." *Id.* To "defeat a plaintiff's prima facie showing of jurisdiction, a defendant must present a compelling case demonstrating 'that the presence of some

21

other considerations would render jurisdiction unreasonable.'" *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)). Allegations of the complaint must be accepted as true to the extent they are uncontroverted by a defendant's affidavit. *Taylor v. Phelan*, 912 F.2d 429, 431 (10th Cir. 1990) (quotation omitted). If the parties provide conflicting affidavits, all factual disputes must be resolved in the plaintiff's favor. *Id.* (quoting *Behagen v. Amateur Basketball Ass'n*, 744 F.2d 731, 733 (10th Cir. 1984)).

Here, All Fresh's complaint alleges that CNAF is an "insurance compan[y] with corporate headquarters and [a] principal place of business in Illinois that [is] licensed to engage in the business of insurance in the State of Oklahoma." [ECF No. 2-1 at ¶ 2]. Every reference to CNAF in the complaint is combined with Transportation and Continental Casualty, as three entities working in concert to do business as "CNA." [*Id.*]. However, Lehman's declaration defeats All Fresh's prima facie showing of jurisdiction by establishing that CNAF does not conduct business in Oklahoma, and that it played no role in All Fresh's interactions with Transportation which give rise to All Fresh's claims. [ECF No. 19-1]. All Fresh does not refute anything in Lehman's affidavit because it has not responded to the motion to dismiss. Therefore, All Fresh has not identified any contested factual issues that merit further inquiry before the Court rules on the motion.

22

The Court finds that it does not have general personal jurisdiction over CNAF. CNAF was incorporated in Delaware and maintains its principal place of business in Illinois. [ECF No. 19-1 at ¶ 2]. CNAF does not own property in Oklahoma, does not maintain offices in Oklahoma, and does not do business as "CNA Commercial Insurance" in Oklahoma or elsewhere. [*Id.* at ¶¶ 5, 14]. CNAF is not a licensed insurer and does not undertake any activities associated with insurers. [*Id.* at ¶¶ 6–13]. All Fresh has failed to demonstrate that CNAF conducts any business activities in Oklahoma, including insurance underwriting. Therefore, CNAF is not "at home" in Oklahoma.

Nor does the Court find specific personal jurisdiction. All Fresh alleges that CNAF, collectively with Transportation and Continental Casualty, issued an insurance policy to insure property located in Oklahoma. [ECF No. 2-1 at ¶¶ 2, 5–6]. However, the declaration attached to CNAF's motion to dismiss demonstrates that CNAF does not issue insurance policies. [ECF No. 19-1 at ¶¶ 6–18]. All Fresh has not rebutted this fact with any declaration or other written materials of their own. Thus, the Court finds that All Fresh has not satisfied its burden of showing that CNAF has sufficient minimum contacts to subject itself to the specific personal jurisdiction of this Court.

"Having determined that CNAF has insufficient minimum contacts to subject it to specific personal jurisdiction in Oklahoma, the Court need not

analyze whether exercising personal jurisdiction over CNAF would offend traditional notions of fair play and substantial justice." *Klintworth v. CNA Financial Corp.*, No. 20-CV-0178-CVE-FHM, 2020 WL 3625733, at *4 (N.D. Okla. July 2, 2020) (citing *OMI Holdings, Inc.*, 149 F.3d at 1091 ("if the defendant's actions create sufficient minimum contacts, we must then consider whether the exercise of personal jurisdiction over the defendant offends traditional notions of fair play and substantial justice." (citation and internal quotation marks omitted)). The Court finds that CNAF's motion to dismiss for lack of personal jurisdiction should be granted.[7]

### D. The Court grants, in part, and denies, in part, CTB's motion for judgment on the pleadings.

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). A motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) is governed by the same standard of review applicable to a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *Soc'y of Separationists v. Pleasant Grove City*, 416 F.3d 1239, 1240–41 (10th Cir. 2005). Thus, a court must "accept all well-pleaded factual allegations in the complaint as true and view them in the light most favorable to the nonmoving party." *Nelson v. State Farm Mut. Auto Ins. Co.*,

---

[7] Having found no personal jurisdiction over CNAF, the Court will not address whether it was properly served.

24

419 F.3d 1117, 1119 (10th Cir. 2005) (internal quotation marks and citation omitted). To survive judgment on the pleadings, a complaint must "contain enough facts to state a claim to relief that is plausible on its face." *Anderson v. Suiters*, 499 F.3d 1228, 1232 (10th Cir.2007) (internal quotation marks and citation omitted).

"Judgment on the pleadings should not be granted unless the moving party has clearly established that no material issue of fact remains to be resolved and the party is entitled to judgment as a matter of law." *Park Univ. Enters., Inc. v. Am. Cas. Co.*, 442 F.3d 1239, 1244 (10th Cir. 2006), *abrogated on other grounds by Magnus, Inc. v. Diamond State Ins. Co.*, 545 F. App'x 750, 753 (10th Cir. 2013) (citation and internal quotation marks omitted). Fed. R. Civ. P. 12(d) further provides that "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Therefore, under Rule 12(d), the Court will consider only matters in the complaint, the answer, and documents attached as exhibits to either. *Park Univ. Enters., Inc.*, 442 F.3d at 1244, 1247. Additionally, the court "may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *BV Jordanelle, LLC v. Old Republic*

*Nat'l Title Ins. Co.*, 830 F.3d 1195, 1201 n.3 (10th Cir. 2016) (quotation omitted).

CTB asks the Court to grant judgment on the pleadings on the ground that any potential claim All Fresh has against it is barred by the applicable statute of limitations. [ECF No. 23]. All Fresh responds by moving to strike CTB's motion as untimely because the pleadings are not yet closed. [ECF No. 28 at 1]. In support, All Fresh argues that it requested leave to amend in state court, and that if its motion for remand is denied, it will file a new motion to amend in this Court. [*Id.* at 2]. In its response to CTB's motion for judgment on the pleadings, All Fresh fully incorporates by reference its motion to strike. [ECF No. 29 at 2]. All Fresh further argues that its claims against CTB sound in contract and are not time-barred because "a limitations challenge is not subject to a motion to dismiss" and it "has a written agreement with" CTB. [*Id.* at 5]. Although All Fresh avers that the allegations in the complaint are sufficient to withstand a motion to dismiss, it states that it will seek leave to amend if the Court finds the complaint deficient in stating a claim. [*Id.* at 4–5].

First, the Court rejects All Fresh's assertion that CTB cannot raise the affirmative defense of a statute of limitations bar in its motion. "[A]lthough a statute of limitations bar is an affirmative defense, it may be resolved on a Rule 12(b)(6) motion to dismiss 'when the dates given in the complaint make

clear that the right sued upon has been extinguished.'" *Radloff-Francis v. Wyoming Medical Center, Inc.*, 524 F. App'x 411, 413 (10th Cir. 2013) (quoting *Aldrich v. McCulloch Props., Inc.*, 627 F.2d 1036, 1041 n. 4 (10th Cir. 1980)). Accordingly, All Fresh's motion to strike is denied.

For its claim against CTB, All Fresh alleges:

- The payment of premiums to CNA for the insurance policy on the Property … was accomplished via an auto draft/autopay system wherein CNA automatically withdrew Plaintiff's premiums from Plaintiff's bank account at [CTB] on a predetermined schedule and basis.

- The payment for the Policy had been set up on autodraft/autopay for many years prior to the events in question.

- In late 2019, CNA's autodraft/autopay system created an interruption of payment on the Policy.

- Despite Plaintiff's specific instruction to [CTB's] private bank representative to pay the Policy premiums to CNA's autodraft/autopay system [CTB] failed to pay the premiums as directed.
  …

- On December 30, 2019, a fire took place at the Property, causing significant and permanent damage ….

- On October 5, 2020, CNA … den[ied] all coverage for the Loss under the Policy due to the alleged lapse in coverage ….

- If it is determined that the Policy was properly cancelled for non-payment of a premium[,] then [CTB] is liable to Plaintiff for all loss covered under the Policy because of its duty to the Plaintiff.
  …

- That as a result of the aforementioned acts and omissions, Defendants also breached their contractual obligations to Plaintiff under the Policy.

  …

- If the Policy was properly cancelled by CNA[,] then the cause of such cancellation was the failure of [CTB] to perform its duty to the Plaintiff by the premium payment to CNA through the account with [CTB].

[ECF No. 2-1 at ¶¶ 7–10, 12, 19, 23, 26, 29].

The Court finds that these allegations could possibly give rise to claims of negligence, breach of fiduciary duty, and/or breach of an oral, implied, or written contract. But All Fresh does not explain whether its "specific instruction to [CTB's] private bank representative to pay the Policy premiums" was an oral, implied, or written directive. Nor does it describe what type of "contractual obligation" was owed it "under the Policy." All Fresh also fails to define the specific type of "duty" CTB allegedly owed. Although All Fresh provides additional details in its response, it did not allege these facts in the complaint and the Court excludes them under Fed. R. Civ. P. 12(d).

In Oklahoma, the limitation period runs two years for negligence or breach of fiduciary duty, and three years for breach of an oral or implied contract. 12 O.S. § 95(A)(2–3).[8] "Under Oklahoma law, the limitations period

---

[8] When federal subject matter jurisdiction is predicated on diversity of citizenship, the Court applies the law of the forum state. *See Universal Underwriters Ins. Co. v.*

in § 95 begins to run 'from the time the elements of a cause of action arise.'"

*Cross Oil Co. v. Rush Truck Ctrs. of Okla. Inc.*, No. CIV-19-0112-HE, 2019

WL 13236916, at *1 (W.D. Okla. May 29, 2019) (quoting *MBA Commercial*

*Const., Inc. v. Roy J. Hannaford Co., Inc.*, 818 P.2d 469, 473 (Okla. 1991)). All

Fresh alleges that it was informed in writing on October 5, 2020 that its

insurance claim was denied due to the alleged lapse in coverage for

nonpayment of policy premiums. [ECF No. 2-1 at ¶ 19]. "Oklahoma also

follows the discovery rule allowing limitations in certain tort cases to be

tolled until the injured party knows or, in the exercise of reasonable

diligence, should have known of the injury." *Calvert v. Swinford*, 382 P.3d

1028, 1033 (Okla. 2016) (citations omitted). So, All Fresh should have known

about the lack of payment as of October 5, 2020. Therefore, it had until

October 5, 2022 to bring claims of negligence or breach of fiduciary duty.

Because this action was filed in July 2023, these claims are barred by the

statute of limitations.

    The same is true for any breach of an oral or implied contract claim. "The

discovery rule does not apply to an action for breach of contract under

Oklahoma law. The claim accrues when the contract is breached, regardless

of whether the plaintiff knows, or in the exercise of reasonable diligence,

---

*Winton*, 818 F.3d 1103, 1105 (10th Cir. 2016) ("federal court applies law of forum state in diversity actions").

should have known of the breach." *Morgan v. State Farm Mut. Auto. Ins. Co.*, 488 P.3d 743, 753 (Okla. 2021). All Fresh alleges that a payment was not made in late December 2019. [ECF No. 2-1 at ¶¶ 9–10]. So, a claim for breach of an oral or implied contract had to have been filed before the end of 2022 for it to have remained viable under the statute of limitations.

But the limitation period runs five years for breach of a written contract. *Id.* at § 95(A)(1). All Fresh filed its complaint on July 12, 2023. [ECF No. 2-1]. Thus, to the extent All Fresh alleges claims of negligence, breach of fiduciary duty, and/or breach of an oral or implied contract, CTB's motion for judgment on the pleadings is granted. It is denied as to any alleged claim of breach of a written contract.

Notwithstanding All Fresh's improper request, the Court will grant it leave to amend the vague allegations in the complaint. *See Johnson v. Spencer*, 950 F.3d 680, 721 (10th Cir. 2020) ("a bare request to amend in response to a motion to dismiss is insufficient to place the court and opposing parties on notice of the plaintiff's request to amend and the particular grounds upon which such a request would be based"). Outside amendment as a matter of course, a party may "amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Leave to amend should be freely given "when justice so requires." *Id.* The court should "generally refuse leave to amend only on a showing of undue delay, undue

30

prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Duncan v. Manager, Denver Dep't of Safety*, 397 F.3d 1300, 1315 (10th Cir. 2005) (citation and internal quotation marks omitted). However, "[t]he grant of leave to amend the pleadings pursuant to Rule 15(a) is within the discretion of the trial court." *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006) (quoting *Zenith Radio Corp. v. Hazeltine Rsch., Inc.*, 401 U.S. 321, 330 (1971)).

Here, the Court grants All Fresh leave to amend in accordance with Fed. R. Civ. P. 15(a)(2). Should All Fresh choose to amend, it must do so no later than **21 days** from the date of this order.

## III.    <u>Conclusion</u>

**IT IS THEREFORE ORDERED** that All Fresh's application for ruling [ECF No. 44] is GRANTED, Transportation's motion to amend [ECF No. 10] is GRANTED, and All Fresh's motion to remand [ECF No. 24] is DENIED.

**IT IS FURTHER ORDERED** that CNAF's motion to dismiss [ECF No. 19] is GRANTED. All Fresh's complaint [ECF No. 2-1] is dismissed without prejudice, in part, as to all claims asserted against defendant CNAF.

**IT IS FURTHER ORDERED** that CTB's motion for judgment on the pleadings [ECF No. 23] is GRANTED, in part, and DENIED, in part, in

accordance with this Order. All Fresh's motion to strike [ECF No. 28] is DENIED.

   **IT IS FURTHER ORDERED** that All Fresh and defendants Transportation, Continental Casualty, and CTB shall file a joint status report no later than February 27, 2026.

   DATED this 27th day of January, 2026.

_____
Sara E. Hill
UNITED STATES DISTRICT JUDGE